Good morning. This next case is 4-14-0592 Pliura Intervenors Petitioner v. Illinois Commerce Commission et al. Respondents. And for appellant, we have Mr. Pliura. Thank you. And for the appellate counsel, if you could identify yourself for the record and also identify for the record if you will be presenting and how much time you will be using. Good morning, Your Honor. G. Daryl Reed of the law firm Citigroup, Austin, LLC. On behalf of the MLA, English Pipeline Company, now known as Illinois Extension Pipeline Company, I intend to file a suit. All right. Thank you. Your Honor, appearing for the Illinois Commerce Commission, Matthew L. Harvey, Special Assistant Attorney General. I, too, will be using 10 minutes. All right. Thank you. Counsel at the table. G. Daryl Thomas, Citigroup, Austin, LLC. Or Illinois Extension Pipeline Company, Mr. Reed of New York. All right. Thank you. Mr. Pliura, you're going to be splitting your time. You'll have time and response. Is that right? I will, Your Honor. I do not anticipate being long. I'm going to take about five minutes. I'm going to assume that everybody's read, and if I can have five minutes in rebuttal if I use it, but I'm not planning on. You may be disappointed. All right. Thank you. All right, Mr. Pliura, you may proceed. May it please the court, counsel, this is a pleasure for me. In Russia, we don't get the opportunity for landowners to challenge a state action when somebody's going to take your land. In China, they don't give you this opportunity. This has been an eight-year ongoing battle. It involves a public utility. It involves certain things known as a Certificate of Public Convenience and Necessity. Now, there is a case that I found after I did my brief. It's a Supreme Court case, Chicago Railways v. Illinois Commerce Commission, 336 Illinois 51. I don't have any idea what the rules are on citing that. That issue revolves around the same thing where an expired permit occurred, and the Supreme Court reviewed that. I'm just going to touch on that. But under 8406, unless a Certificate of Public Convenience and Necessity is exercised within two years, it becomes null and void. There isn't any question that that occurred in this particular case. There isn't any question that the initial applicant for the project is a pipeline certified as a public utility. The Lakehead project and the Lakehead case that was cited here identifies that public need aspect of the statute is served to protect and restrict the exercise of eminent domain. Really what happened here is the applicant... We were here on the 07446 case where this 4th District upheld the granting of a Certificate of Good Standing back in 2009. We were here. Applicant chose not to proceed with that project. They cite several things. They did not... There was a great recession. The market conditions changed, but what happened is they didn't move forward. And they let four years expire. And then in 2013, they moved forward and decided we're going to do a different project. We're going to do not the project that was approved, not the project, the 36-inch pipeline to bring Canadian crude from Alberta, but a different project. We have the wrong project, the wrong pipeline, and the wrong product. We're going to ship a completely different product through that line than what was originally proposed. But because there was unprecedented opposition to that project, they didn't want to redo and start back at square one. So they said we're just going to assume that this same project would be approved and we're going to move forward with that. And we raised our hand. Landowners said, you can't do that. You've got to go back and start at square one. Everybody just closed their eyes to that project, that fact. And under Lakehead, the only chance that a landowner, or in this case, many landowners have to challenge that is through this eminent domain proceeding. And actually the precursor to the eminent domain is this process where we go through to get eminent domain authority. But the problem here is that they don't match up. We now have a certificate that granted them authority to build a 36-inch pipeline for a different project, for a different product, to come for a different pipe. But they want to use the original certificate of good standing from that for a different project. And we say you can't do that. What is absent in the briefs from the ICC and the Illinois Extension Pipeline is any mention about the change in the project. They would ask that we just all ignore that and assume that they're moving ahead, and we're not allowed to ask that question. Our brief is, this is an eight-year deal, eight-year battle I'll call it. I'm happy to answer any questions. I assume your justices have reviewed the materials. If you have any questions, I'm happy to answer. Thank you. And I do appreciate the opportunity to be up here today. Thank you. All right, thank you. Mr. Harvey or Mr. Reed, who will proceed first? All right, Mr. Reed. Thank you. Good morning, once again. Justices, I appreciate the opportunity to appear before you here this morning. I will likewise be brief. We are here today to address an order entered by the Illinois Commerce Commission, inducted 130446, which was an eminent domain granting. Under eminent domain, under 8509, there are two issues that the commission must address, good faith negotiations and impacts. Those are the only two issues before you here today that we believe. I will briefly respond to certain comments that were made. First of all, this is a case under 8509. The certificate in good standing granted by the commission in the prior docket, 070446, was done pursuant to 15401. Under Article 15 of the Public Utilities Act, specifically 15101, there are only three sections under Article 8 that are applicable to pipeline carriers, 8101, 8503, and 8509. 8406 is not applicable to pipeline carriers. Therefore, the two-year limit that's under 846 simply isn't applicable. If the General Assembly wanted 8406 to apply to pipeline carriers, they would have included it in 15101. They did not do so. Once again, this is not a rehash of the certification case. The commission entered an order in December on reopening to address a number of the issues that were raised in the certification proceeding. This is only, once again, about two issues. The intervening events alluded to by the appellants are in the certification proceeding, not in the eminent domain proceeding. If you look at the ICC's order, it simply says that you, Enbridge, have the ability now to seek further relief in the circuit court. In this instance, under 8509, the commission is exercising a legislative function, not a judicial function. Under the Eminent Domain Act, the commission has one charge, and that is to determine whether or not a utility can move forward and seek relief in the circuit courts under the Eminent Domain Act. That is the goal that the General Assembly has prescribed for instances such as this, when utilities want to construct a pipeline and get eminent domain. Good faith negotiations and impasse were included by the ICC in the five factors that they looked at. There is no question about that. The only issues here today are whether or not the commission was acting in a legislative capacity and whether or not the commission fulfilled its obligations under the statute to make sure that the two prongs, good faith negotiations and impasse, were met. Substantial evidence of record included in the order that you have before you proves that the commission, in fact, did what it was charged to do. The commission was not charged to act as a circuit court judge, nor was the commission obligated to stand in as a jury to determine some of the matters that a circuit court would determine, such as appraisals, the amount of the land, the burden that's put on the landowner. None of that was properly before the ICC. Those are matters for the circuit court. So the only other thing I have to say is you currently have before you our motion to strike addressing three issues that I won't allude to today, but you are well versed in what they are. The only issue that's up before you today is the sufficiency of the evidence contained in the record with respect to 8509. Do you have any questions of me? It doesn't appear that there are any. Thank you. Thank you, Your Honor. Mr. Harvey? May it please the Court and counsel, I, like my colleagues, am gratified to be able to argue before you today. I will address two issues, one of which my colleague, Mr. Reed, has partially anticipated. With respect to the certificate in good standing, I would first submit to you that the appellants have waived any argument that they might have with respect to the proposition that the certificate is either expired or abandoned as a consequence of its not being exercised within two years. It's very well established that to raise an argument on appeal, an appellant has to first raise it in its application for rehearing before the commission. This is so the commission can correct any errors of law or fact that it made in its initial order. In their application for rehearing, the appellants concede, and I quote, that the statutes and regulations do not set a fixed time to exercise a certificate in good standing. In other words, not only is there a waiver here, but it's an affirmative one. This is an issue that simply cannot be raised. The two-year period, is that what you're referring to? That's correct, Your Honor. Was argued to us? Yes. This could not possibly be considered here. Second of all, if the court chooses to reach the merits, Mr. Reed is correct. There is nothing in Section 15401, either its text or the structure of Article 15, that would lead to the conclusion that there is any date certain by which such a certificate has to be exercised. There is simply no basis to read into this statute a limitation or exception that the General Assembly chose not to include. Now, one other issue that I would like to discuss briefly is the question of substantive due process. And I will just say at the Commission, we take our obligation to render the highest level of due process very seriously. And it's the Commission's position that the appellants were not denied substantive due process in the proceedings below. The argument, however couched, is that they were limited in their evidentiary presentation to only those issues relevant to the need for an appropriateness of eminent domain. And that they were prevented from introducing evidence relating to public convenience and necessity, public benefits, and the applicant's fitness, willingness, and ability to operate and maintain and construct a pipeline. And the Commission's position is that this argument should be rejected. A due process violation, or at least with respect to substantive due process, requires that there be a, in this case, deprivation of property in a manner shocking to the conscience. And the appellants simply cannot meet this standard. The appellants indeed were permitted to elicit at least some of the evidence that they allege they were entitled to bring forward that related to safety. The Commission made detailed reference to this in its order below, and I can give you more citations than you're probably interested in today. Finally, the case law makes clear that the mere granting of authority to take property through eminent domain, as opposed to seeking condemnation of a parcel or parcels under the Eminent Domain Act, simply does not give rise to a due process right, because it doesn't immediately put the property at risk. And that is something that's well established in the case law and cited in our brief. In short, this Court should affirm the Commission's decision below in all particulars, and I'm prepared to answer any questions you may have. All right, I see none. Thank you, Mr. Harvey. Mr. Pera, reply. Everyone will get a early break, or lunch. A couple of issues. On page 16 and 17 of our brief, I'm sorry, 16 and 17 in regards to the waiver issue, I think there's a misunderstanding below. It's very clear we did state at one point that the statute and regulations did not set a fixed time. I was referring to the actual construction process. We then moved to supplement and cited the very statute that talked about the two-year time limit, specifically 8-406. To believe the appellee's view, the ICC could issue a finding of public convenience and necessity today, and they could wait for 20 years and come back and say, it's valid, we've now decided to go forward. The reason that there is this two-year statute of limitations, so to speak, or two years of move forward or it's null, is because things change. Under their view, they could just hold the certificate for 20 years, 40 years, and come back. Did you argue in front of this Commission the argument you're now making? We cited that, specifically the statute. In the record, we cited it. Well, you heard the argument that Mr. Hyrie made, that not only did you forfeit it, this is a specific waiver of this very claim. This argument was cited in the ICC at the record, 8-89, where we cited it. What did you say in doing so? We supplemented the record, and we moved to supplement to that very statute. What about the pleading he cited where you affirmatively waived this argument? Well, that's taken out of context. That's what I say at page 16. I said the statute of regulations don't set a fixed time to start construction. They don't say you have to start construction within six months of granting this permit. They don't set a time frame at which you have to start laying that pipe down. And then after that argument came up, well, wait a minute, you've waived that. No, no, that was a misunderstanding or taken out of context. Our point was, it doesn't say you have to start, otherwise you waive it, but what is clear under the statute, and that 1929 case governs that or talks even about it, it's not a new concept, that you can't just do nothing. You have to do something more than nothing. And they did nothing. Nothing. They didn't move forward. Any other questions, I'm happy to answer. Thank you.